# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

v.                                 CRIMINAL ACTION NO. 2:23-cr-00012

TAYLOR WOMACK,

                Defendant.

### MEMORANDUM OPINION AND ORDER

The Court has reviewed the *Defendant's Motion to Suppress Evidence* (Document 42) and the *Government's Response to Defendant's Motion to Suppress Evidence* (Document 47). The Court has also considered the testimony of Deputy Cooper and Detective Middleton of the Kanawha County Sheriff's Office, taken during the suppression hearing held on April 20, 2023. For the reasons stated herein, the motion to suppress should be denied.

### FACTUAL BACKGROUND

In a *Superseding Indictment* (Document 25) returned on February 7, 2023, the Defendant, Taylor Womack, was charged with violating 18 U.S.C. § 922(g)(1), for knowingly possessing a firearm after having been convicted of a felony offense. Deputy Cooper stopped Mr. Womack on September 7, 2020, and discovered a loaded FEG, Model PA-63, 9mm firearm during a frisk of Mr. Womack's person. The Defendant challenges whether Deputy Cooper had sufficiently developed reasonable suspicion to perform the stop and frisk.

1

Detective Middleton testified that there had been a history of multiple trespassing and theft offenses at the Peerless Block & Brick Company (Peerless), located west of St. Albans, West Virginia, along the west bank of the Kanawha River.   Due not only to the repeated crime related to Peerless but also due to other criminal activity, Detective Middleton classified this area as a "high crime area."[1]   In response to the criminal activity, Detective Middleton, with the permission of Peerless, installed several motion activated cameras on the premises.   When activated, notifications and video clips were sent to an app on Detective Middleton's phone.

On September 7, 2020, at approximately 11:15 P.M., Detective Middleton received a notification from one of the cameras located at Peerless.   The video (Government Ex. 1), briefly showed a man walking by, wearing a long sleeve shirt and pants, a baseball cap, a backpack, and carrying something in his hand.   After seeing the video, Detective Middleton contacted Deputy Cooper, who was on patrol close to the Peerless property.   Deputy Cooper recalls that Detective Middleton told him that one of the cameras had been activated and the suspect would likely exit on the north end of the Peerless property.   Detective Middleton also identified the suspect as male and described what he was wearing to Deputy Cooper.

Soon after the call, Deputy Cooper arrived at the intersection of First Street North and Huntington Street, north of Peerless, in a marked police cruiser.   Deputy Cooper saw a man, on foot, in a long sleeve shirt and pants, with a backpack.   He began questioning the man, who was later identified as Taylor Womack.   The man had something in his hand.   Deputy Cooper thought it could be a flashlight or tool.   Initially, no one else was at the scene except Deputy Cooper and

---

[1] Deputy Cooper did not use the oft-repeated phrase that it was a "high crime area."   However, he does state that he was familiar with the area because "it was an area we get called to pretty frequently for different criminal activities," including those related to Peerless.   (Rough Transcript 4:24–25.)

Mr. Womack.   Deputy Cooper recalls that the Defendant was nervous, evasive,[2] and would not turn to face him.   As the exchange continued, the Defendant began touching and shifting his waistband.   Deputy Cooper told Mr. Womack to stop shifting and moving his waistband, but the Defendant continued "messing with his waistband."

At this point, Deputy Cooper decided to place Mr. Womack in handcuffs and perform a *Terry* frisk.   As he performed the frisk, Deputy Cooper felt a hard object around Mr. Womack's waistband, which fell from inside his waistband down his pant leg.   That object was soon identified as a firearm.   At or around the time of the gun falling, Detective Middleton arrived at the scene.[3]   When Detective Middleton arrived, the gun was retrieved from the Defendant's pant leg.   He testified that the Defendant appeared to be the man he saw in the video clip.

## DISCUSSION

When analyzing a motion to suppress, the district court may make findings of fact and conclusions of law.   *United States v. Stevenson,* 396 F.3d 538, 541 (4th Cir. 2005).   On a motion to suppress, the burden of proof is on the party who seeks to suppress the evidence.   *United States v. Dickerson*, 655 F.2d 559, 561 (4th Cir. 1981).   However, once the defendant establishes a proper basis for his motion to suppress, the burden shifts to the United States to prove the admissibility of the challenged evidence by a preponderance of the evidence.   *United States v. Matlock*, 415 U.S. 164, 177 n. 14 (1974).

---

[2] Deputy Cooper recalls that Mr. Womack made statements such as "You don't really need to talk to me," "I didn't do anything," and "Why are you stopping me?"   (Rough Transcript 7:7–9).
[3] The timing of Detective Middleton's arrival on scene was a point of contention during cross-examination, and Detective Middleton was ultimately unable to recall several things, including the precise timing of his arrival, whether the Defendant was cuffed when he arrived, and the timing of when the gun was retrieved.   Ultimately, the disputed timing of these events does not have bearing on the analysis of the suppression issues.

The Fourth Amendment to the United States Constitution protects people from unreasonable searches and seizures.   U.S. Const. amend. IV.   However, an officer does not need a warrant or probable cause to briefly detain someone if the officer has reasonable suspicion that the person is or has been engaged in criminal activity.   *U.S. v. Sokolow*, 490 U.S. 1, 7 (1989) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).   Reasonable suspicion is more than an "inarticulate hunch." *Terry*, 392 U.S. at 22.   Rather, there must be "some minimal level of objective justification" for making the stop.   *INS v. Delgado*, 466 U.S. 210, 217 (1984).   In determining the validity of a *Terry* stop, the Court must consider "the totality of the circumstances—the whole picture."   *United States v. Cortez*, 449 U.S. 411, 417 (1981).

Here, the Court finds that Deputy Cooper had reasonable suspicion to stop Mr. Womack. The Defendant was carrying a backpack, wearing long sleeve clothing, and was traveling north of Peerless, all of which matched the description of the suspect reported to Deputy Cooper by Detective Middleton and as seen on the video.   The entire reason the video had been recorded was due to the frequency of trespassing and theft on the Peerless site, and Deputy Cooper knew of this history.   Further, the video captured a trespass occurring very late in the evening, well after Peerless had ceased operating for the day.   It is a rational inference that "criminal activity was afoot" when Deputy Cooper saw a person who, at 11:15 P.M., was walking not far from Peerless, matching the suspect's description he had received from Detective Middleton.   Given the totality of the circumstances, the stop of the Defendant was appropriate.

The question remains as to whether Deputy Cooper's frisk of the Defendant was appropriate.   When conducting a *Terry* stop, the officers are authorized to "take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the

4

course of the stop." *United States v. Hensley*, 469 U.S. 221, 235 (1985).   Thus, "an officer can frisk a validly stopped person if the officer reasonably believes that the person is 'armed and dangerous.'"   *U.S. v. Robinson*, 846 F.3d 694, 700 (4th Cir. 2017) (citing *Terry*, 392 U.S. at 23).

Here, the Court finds that Deputy Cooper had a reasonable belief that the Defendant was a safety risk, and therefore could frisk him..   Deputy Cooper and Mr. Womack were alone on the street, in an area with a history of criminal activity, at approximately 11:15 P.M., and Deputy Cooper had stopped someone who he reasonably suspected had just committed a crime.   The Defendant attempted to avoid the conversation by not facing Deputy Cooper and was otherwise acting evasive and nervous.   Importantly, the Defendant also began to adjust and move his waistband.   Deputy Cooper asked the Defendant to stop adjusting and "messing with his waistband," and the Defendant continued despite the command.[4]   (Rough Tr. 7:20.)   These circumstances are sufficient to establish a reasonable belief that a frisk was necessary to preserve Deputy Cooper's safety.   In fact, Deputy Cooper testified that he decided to cuff the Defendant when he would not stop messing with his waistband because he was concerned for his safety.   It is reasonable for the deputy to think that the inside of the waistband is a likely place to carry a weapon.   Under all of the circumstances presented here together with the Defendant's refusal to stop touching and adjusting the waistband of his clothing, a reasonably prudent person would believe that Mr. Womack was armed and presently dangerous, making a protective frisk appropriate.   *See, e.g.*, *U.S. v. Mayo*, 361 F.3d 802, 807–08 (4th Cir. 2004) (a *Terry* frisk was appropriate because the suspect was in a high crime area, appeared to be holding something heavy in his pocket, avoided contact with the police, and acted nervous.)

---

[4] In an effort to issue the ruling, the Court has utilized a rough partial transcript of the hearing.   Precise language and page citations may differ in the final version.

5

The Defendant argues the fidgeting around his waist does not give rise to the reasonable belief that he was hiding something dangerous from the officer.   However, it was not his movements alone that established a reasonable belief that the Defendant was a safety risk.   Rather, it is the combination of his movements, the refusal to stop fidgeting with his waistband, his evasive body posture, the time of day, and the reasonable belief that Mr. Womack was a suspect in a theft investigation that created the reasonable suspicion that the Defendant was armed and dangerous.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Defendant's Motion to Suppress Evidence* (Document 42) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER:      April 25, 2023

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

6